# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No.: | 2:22-cv-05607-AB-MAA | Date: | December 8, 2022 |

Title: *Ocugiene, Inc. v. ThermaMEDx, LLC et al*

Present: The Honorable **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER **GRANTING** MOTION TO TRANSFER FOR IMPROPER VENUE [Dkt. No. 24]

Before the Court is Defendant ThermaMEDx, LLC's ("Defendant") Motion to Dismiss or Transfer ("Motion," Dkt. No. 24). Plaintiff Ocugiene, Inc. ("Plaintiff") filed an opposition and Defendant filed a reply. The Court will resolve the Motion without oral argument and therefore **VACATES** the hearing. *See* Fed. R. Civ. P. 78, C.D. Cal. L.R. 7-15. The Motion to Transfer is **GRANTED**.

## I. BACKGROUND

Plaintiff's Complaint alleges claims for patent infringement against Defendant. Plaintiff alleges that venue lies in this District pursuant to 28 U.S.C. § 1400(b), asserting that Defendant has "a regular and established place of business in this district and [has] committed acts of infringement of the patents in this district by offering for sale Infringing Products." Compl. ¶ 11. Defendant moves to dismiss or transfer to the Northern District of Georgia under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or to transfer under § 1404(a) (convenience).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss an action for improper venue. The plaintiff has the burden of showing that venue is proper in the district in which it filed the action. *See In Re ZTE (USA) Inc.,* 890 F.3d 1008, 1014 (Fed. Cir. 2018). When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. 1406(a*).*

Once venue has been challenged, the plaintiff bears the burden to show that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979); *In re ZTE (USA) Inc.*, 890 F.3d at 1014. When considering a motion to dismiss for improper venue, a court need not accept the pleadings as true and may consider facts outside of the pleadings. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

## III.   DISCUSSION

Patent cases are governed by their own venue statute – 28 U.S.C. § 1400(b). Section 1400(b) states that venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Thus, § 1400 provides two alternative means to determine proper venue: where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business. Plaintiff acknowledges that the first option does not apply because Defendant does not reside in this district. Plaintiff argues only that venue is proper based on the second option: that Defendant has a regular place of business in this district.

Defendant does not challenge the adequacy of Plaintiff's allegation that infringement occurred in this District. Rather, the parties dispute whether Defendant has a regular and established place of business in this District.

The Federal Circuit has established a three-part *Cray* test for determining whether a defendant has a "regular and established place of business" in a given district. *See In re Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017). First, "there must be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* Second, the place "must be a regular and established place of business." *Id.* Third, the place of business must be "a place *of the defendant*, not solely a place of the defendant's employee." *Id.* at 1363. A

court may consider "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id.* This test is "specific," "unambiguous," and "restrictive," and if any of the three requirements are not met, then venue is improper under § 1400(b). *Cray*, 871 F.3d at 1360.

In its Complaint, Plaintiff alleges that venue is proper because Defendant has a "a regular and established place of business in this district and [has] committed acts of infringement of the patents in this district by offering for sale Infringing Products." Compl. ¶ 11. Defendant filed the declaration of one of its founding partners, Carl Sweat, to show it lacks any regular and established place of business in this District. *See* Sweat Decl. Specifically, Sweat testifies that Defendant is an Atlanta, Georgia business; that it does not own, rent, lease, or exercise control over any real property in California; that it does not manufacture the accused products in this District; that it does not operate any retail, wholesale, or storage facilities in this district; and that it does not employ anyone (including independent contractors) in this district. *See* Sweat Decl. ¶¶ 4-15. Sweat also explained that Defendant does not control or direct the activities of any doctor, any distributor, any eye care providers such as Eye Care Partners ("ECP"), or any of ECP's optometrists. Sweat Decl. ¶¶ 12-18; *see* also Motion 11:13-12:6. Rather, doctors merely purchase Defendant's products and resell them in their clinics. *See* Sweat Decl. ¶¶ 13, 18.

In its opposition, Plaintiff essentially abandons the Complaint's allegation that venue is based on Defendant's sales of products. However, nor does Plaintiff rebut any of Defendant's facts. Instead, Plaintiff argues that "Defendant's relationships with numerous *agents* in this judicial district meet the three-part *Cray* test." Opp'n 5:15-16 (emphasis added). Specifically, Plaintiff argues that Defendant sells its infringing products via local medical practitioners and has a "network" of such professionals including its partnership with EyeCare Partners, which appears to be a network of clinics. Plaintiff argues that these entities are properly characterized as Defendant's agents so their place of business is attributable to Defendant.

These allegations do not satisfy the *Cray* test. Plaintiff's assertion that the various medical practitioners' place of business can be deemed Defendant's place of business turns on the idea that those practitioners are Defendant's agents. *See* Opp'n 5: 15-17 ("Defendant's relationships with numerous agents in this judicial district meet the three-part *Cray* test."). It is true that an agent's activities can be considered in determining a principal's regular and established place of business for purposes of the *Cray* test. *See In re Google LLC*, 949 F.3d 1338, 1345 (Fed.

Cir. 2020) ("We conclude that a 'regular and established place of business' requires the regular, physical presence of an employee *or other agent of the defendant* conducting the defendant's business at the alleged 'place of business.'"). However, Plaintiff has not plausibly set forth an agency relationship.

An agency relationship is a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act." Restatement (Third) of Agency § 1.01. The essential elements of agency are (1) the principal's "right to direct or control" the agent's actions, (2) "the manifestation of consent by [the principal] to [the agent] that the [agent] shall act on his behalf," and (3) the "consent by the [agent] to act." *Meyer v. Holley*, 537 U.S. 280, 286 (2003).

Plaintiff argues that the "that the doctors and clinics located in this judicial district, which are listed under the 'Doctor Locator' on Defendant's website" are properly characterized as "agents." Opp'n 6:12-16. But Plaintiff has not addressed each of the agency elements, let alone established them. By contrast, Defendant has rebutted them with evidence. It has attested that its "Doctor Locator" merely allows patients to find referring doctors if they want to place an order. Sweat Decl. ¶ 12. In addition, including a doctor in Defendant's "Doctor Locator" does not create any contractual relationship between Defendant and that doctor, and furthermore, Defendant does not control the activities of any of the doctors listed there, or anyone who sell its products. *See* Sweat Decl. ¶¶ 13-14. Defendant also states that it provides brochures and other informational materials to doctors, but cannot and does not control what they communicate to patients or what they sell to patients. *Id.* ¶¶ 14, 18. Plaintiff's respond only that Defendant "still exercises a degree of control" over the doctor's marketing and sale of the products, such as by providing information about them, and that Defendant likely sets a minimum price for the products. However, providing information and a purported price floor fall far short of the control needed to establish agency. *See In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1209–11 (Fed. Cir. 2022) (agreement that "imposes constraints" or "set[s] standards" but "does not itself create a right of control" does not create an agency relationship, and holding franchise agreements did not give rise to an agency relationship where they did not "evidence any control over the sales process itself" and reversing district court's conclusion that venue was proper). Furthermore, Plaintiff neither explains nor shows how the doctors or clinics are *acting on* Defendant's behalf, which is a foundational premise of the principal-agent relationship.

In summary, because Plaintiff has not and cannot establish that the doctors and/or clinics listed in its "Doctor Locator" or who re-sell its products are Defendant's agents, Plaintiff cannot show that their activities constitute a place where "the business *of the defendant* is carried out" or that their place of business is "a place *of the defendant*." Plaintiff therefore cannot satisfy the *Cray* test and venue is not proper in this District.

Plaintiff asks for leave to amend to properly plead venue. However, all of Plaintiff's arguments—that the doctors/clinics who sell Defendant's products are its agents—already go beyond what Plaintiff has alleged in the Complaint. If Plaintiff had additional allegations or evidence to establish venue, it could have and should have raised them in its opposition. Nor does Plaintiff elaborate on what additional facts it would allege to establish venue. Amendment will be denied.

If venue is improper, courts may transfer an action to the appropriate jurisdiction in the interest of justice. 28 U.S.C. § 1406(a). In the interest of justice, Court will transfer the action to the Northern District of Georgia, a proper venue.

Finally, Defendant requests its fees and costs to bring this motion because Plaintiff's venue allegations and arguments are frivolous. The Court agrees that the Complaint's single venue allegation was frivolous based on existing law (*TC Heartland LLC v. Kraft Foods Group Brands*, *LLC*, 137 S.Ct. 1514 (2017), *In re Cray*, and cases applying them), and that Plaintiff's agency-based arguments in the opposition were frivolous because they were unsupported by facts or a plausible theory. And, Plaintiff had the opportunity to avoid this Motion. Finally, Plaintiff did not oppose Defendant's request for fees, and thus consented to it. Nevertheless, the conduct in issue in the cases Defendant relies upon generally involved more extended conduct. For this reason only, the Court declines to award fees.

## IV.   CONCLUSION

Defendant's Motion to Dismiss or Transfer for Improper Venue is **GRANTED**. The Clerk's Office is **ORDERED** to transfer this matter to the United States District Court of the Northern District of Georgia.

**IT IS SO ORDERED**.